■ In the Matter of EDWIN O. GOMEZ, a Person Alleged to be a Juvenile Delinquent, Appellant.—Two final orders of disposition, Family Court, New York County (Bruce Kaplan, F.C.J.), entered on or about November 21, 1986, which concurrently placed appellant with the New York State Division for Youth, Title III for a period of up to 12 months, unanimously modified, on the law and the facts, appellant's immediate release directed, and the matter remanded for a new dispositional hearing, and otherwise affirmed, without costs.

One order of disposition followed a fact-finding determination on March 3, 1986 that appellant had committed an act which, if committed by an adult, would constitute the crime of criminal trespass in the third degree (Penal Law § 140.10 [a]).

The second order followed a determination on November 21, 1986 that appellant had violated the conditions of probation incident to the first disposition. Appellant had been placed on probation on October 9, 1985 following a fact-finding determination on August 30, 1985 that he had committed an act which, if committed by an adult, would constitute the crime of criminal mischief in the fourth degree (Penal Law § 145.00 [1]). The criminal mischief charge consisted of placing a sticker on a New York City Transit Authority subway car. The trespass charge consisted of appellant's illegal entry upon a "layup track" of the New York City Transit Authority subway. Although these acts were literal violations of the cited sections of the Penal Law, in the eye of a benevolent parent (and the State, as *parens patriae,* need not wholly eschew such a character), they might well be viewed as boyish pranks.

Appellant is now a 16-year-old youth with a tested low average I.Q. of 85. He has had a troubled upbringing with a mother who finds it difficult to discipline him. His supervening problem appears to be persistent truancy from the Livingston High School where he was enrolled for "special education classes". As his probation officer testified, he had told her "many times" that he did not believe the Livingston School was the correct place for him and that he wanted to, and would, attend regular high school classes.

From the official point of view, appellant's troubles began at age nine when he was referred to the Committee on the Handicapped (COH) for allegedly fighting in school. His cooperation with COH and its recommendations was sporadic, if not minimal, over the years. When appellant was first placed on probation he was referred to the Alternatives to Detention Program (ADT). Apart from a direction that he attend counseling at Columbia Presbyterian Hospital (where he frequently defaulted in appearance), it seems that the major effort of ADT and the probation officer was simply to engineer his reentry into the Livingston School special education program. Predictably, appellant both resented and resisted this pressure.

Family Court correctly described the activity of the probation officer in this case as "inept", and her record keeping "execrable." Yet it was these records that formed a significant part of the foundation for the hearing testimony of a senior psychologist with the Family Court Mental Health Clinic, who diagnosed appellant's mental condition as "conduct disorder, undersocialized, aggressive." On cross-examination this expert

admitted that her diagnosis required a determination as to seven separate criteria, and that she lacked adequate information as to several of these necessary to make a firm diagnosis.

Clearly, this record does not support the determination of Family Court which consigns appellant to a secure Title III facility. It is conceded that there is no need to confine appellant for "the need for protection of the community" (Family Ct Act § 352.2 [2] [a]). We find that these dispositions of the Family Court failed to conform to the cited statute which requires that in all cases where the protection of the community is not threatened, "the court shall order the least restrictive available alternative * * * which is consistent with the needs and best interests of the respondent" (Family Ct Act § 352.2 [2] [a]; see, Matter of Andre L., 64 AD2d 479).

Accordingly, we direct a further dispositional hearing at which the availability of a program geared to the restoration of appellant to attendance at a regular high school should be explored, with such counseling or other support service as may be appropriate. By this determination we do not mean entirely to preclude the court from consideration of a Title III placement, but we do emphasize the statutory command that whatever the ultimate disposition, it must be the least restrictive approach to the solution of appellant's adjustment problems, as well as one which continuation of his life in his own home (with whatever assistance and guidance his mother may benefit from) is given a high priority. Concur—Carro, J. P., Asch, Rosenberger, Ellerin and Wallach, JJ.